1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD WILLIAMS, | ) Case No.: 1:21-cv-00090-DAD-SAB (PC) |
| Plaintiff, | ) |
| | ) **FINDINGS AND RECOMMENDATIONS** |
| v. | ) **RECOMMENDING DISMISSAL OF ACTION** |
| | ) **FOR FAILURE TO STATE A COGNIZABLE** |
| CLARK J. KELSO, et al., | ) **CLAIM FOR RELIEF** |
| | ) |
| Defendants. | ) (ECF No. 14) |
| | ) |

Plaintiff Richard Williams is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## PROCEDURAL BACKGROUND

On January 21, 2021, this action was removed from the Kern County Superior Court by Defendant Kelso.   (ECF No. 1.)

On January 27, 2021, Defendant Kelso filed a motion to dismiss.  (ECF No. 3.)

On January 28, 2021, the undersigned issued Findings and Recommendations recommending that Defendant's motion to dismiss be denied, without prejudice, as premature.  (ECF No. 5.)  The Findings and Recommendations were adopted in full on March 5, 2021.  (ECF No. 7.)

On March 8, 2021, the Court screened Plaintiff's complaint, found that Plaintiff failed to state any cognizable claims, and granted Plaintiff thirty days to file an amended complaint.  (ECF No. 8.)

1    Plaintiff filed a first amended complaint on March 22, 2021.  (ECF No. 9.)

2    On May 17, 2021, the undersigned issued Findings and Recommendations recommending

3    dismissal of the action, without prejudice, for failure to exhaust the administrative remedies.  (ECF

4    No. 10.)

5    On May 28, 2021, Plaintiff filed a motion for leave to file a second amended complaint.  (ECF

6    No. 11.)   The Court granted Plaintiff's motion for leave to file a second amended complaint on June

7    1, 2021, and Plaintiff filed a second amended complaint on June 28, 2021.  (ECF Nos. 12, 14.)

8    **II.**

9    **SCREENING REQUIREMENT**

10   The Court is required to screen complaints brought by prisoners seeking relief against a

11   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court

12   must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

13   or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary

14   relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28

15   U.S.C. § 1915A(b).

16   A complaint must contain "a short and plain statement of the claim showing that the pleader is

17   entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

18   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

19   not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550

20   U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated

21   in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

22   Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally

23   construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th

24   Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which

25   requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is

26   liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962,

27   969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and

28

2

"facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

On June 9, 2015, Plaintiff had surgery on his keloids, but they unfortunately grew back in 2017, with constant pain.  In 2017, the keloids caused pain on the back of Plaintiff's head, neck, and face.  Plaintiff began to have severe pain, distress, and physical discomfort.

On January 1, 2017, Plaintiff was seen by Dermatologist Sugarman who recommended keloid removal surgery.  Plaintiff was informed of the possibility of reoccurrence of the keloids after removal and Plaintiff agreed that the benefit of surgery outweighed any risks.  Dr. Sugarman failed to carry out or perform Plaintiff's keloid surgery.  Dr. Sugarman denied Plaintiff strong pain medication and recommended only Ibuprofen or Tylenol which did not help with the pain.   Dr. Sugarman left Plaintiff in severe pain.

On June 17, 2017, Plaintiff requested medical attention.  However, Plaintiff has been denied pain medications and surgery has been delayed.

 On September 27, 2017, Plaintiff was seen for plastic surgery consultation and steroid injections were recommended.  Dr. Rohrdanz made a decision to not do surgery when he knew and noted that Plaintiff's keloids were stable and did not appear to be over reactive.  Dr. Rohrdanz made a recommendation to leave Plaintiff in pain by not doing surgery when he was not sure if Plaintiff had surgery the risk that his keloids will return larger or bigger.  Dr. Rohrdanz was not sure of his recommendations.

On January 10, 2018, Plaintiff was examined by Dr. Freeman during which he was in severe pain.  Dr. Freeman denied strong pain medication and continued to recommend only Ibuprofen or Tylenol which did not help his pain.  Dr. Freeman has only performed the surgery to Plaintiff's facial area, and not on his neck or back of head.  The surgery has been delayed and refused for nine months during leaving Plaintiff in severe pain.

On May 9, 2018, Plaintiff requested Gabapentin or Lyrica which is stronger pain medication. However, Dr. Rohrdanz offered Tylenol, Ibuprofen, or Naproxen for pain, which Plaintiff refused because it did not help.  Dr. Rohrdanz did not provide Plaintiff with any other medications to help with pain.

On September 6, 2018, Plaintiff was seen by Dr. Rohrdanz who informed Plaintiff that the referral was denied.

On September 9, 2018, Plaintiff exhausted his administrative grievance appeal at the first level of review which was resolved to his satisfaction.

Plaintiff is constantly bleeding heavily from the back of his head and neck area.  Plaintiff is also in severe pain in his facial area which occurred during his first keloid surgery.  Plaintiff was informed that his upcoming surgery was delayed due to the COVID-19 pandemic which is not true as it is now under control.  Plaintiff continues to bleed from the back of his head and neck causing severe pain.

**IV.**

**DISCUSSION**

**A.     Deliberate Indifference to Serious Medical Need**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.  A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

4

Negligence or medical malpractice do not rise to the level of deliberate indifference.  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d at 242, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

In responding to Plaintiff's inmate appeal on November 26, 2018, it was specifically stated as follows:

> On 07/28/17 you were seen for a dermatology consult.  At this time, recommendations for Triamcinolone cream were made.  On 09/27/17 you were seen for a plastic surgery consult.  Recommendations were made for steroid injections.  It was determined at this time surgical removal of keloids will not be considered as the risks outweigh the benefits as they are highly likely to return and could potentially grow larger.  On 01/10/18 you were seen for a follow-up with plastic surgery at which it was noted keloids are stable and do not appear to be over reactive.  On 08/2/18 you were seen by Dr. Rohrdanz, MD.  During this examination a request for dermatology was submitted.  On 09/06/18 you were seen again by Dr. Rohrdanz, MD at which time you were notified your referral was denied.  Subsequent to 07/2017, there is no documentation of CDC 7362, Health Care Services Request Form, submittals with concern for

5

keloid scar pain or discomfort.  On 10/22/18 a CDC 7362, Health Care Services Request form #5933759 was submitted by the Health Care Grievance Office on your behalf.

During your visit with D. Rohrdanz, MD on 05/09/18 it is noted you requested Gabapentin or Lyrica for your pain.  At this time, you were informed neither Gabapentin nor Lyrica is warranted for your pain.  You were offered, Tylenol, Ibuprofen or Naproxen for pain; however, you refused these medications.  While you have the right to refuse most health care, you are considered an active partner and participant in the health care delivery system.  You are encouraged to cooperate with your health care providers in an effort to achieve optimal clinical outcome.  California Correctional Health Care Services health care providers are trained and capable of providing care for patients with pain.  California Correctional Health Care Services Pain Management Guidelines were adopted to standardize the effective assessment, treatment, and management of patients with acute and chronic pain.  It is generally not possible to relieve all pain in patients with chronic pain.  The goal is to maximize function while avoiding the serious side effects of the stronger pain medications and/or procedures.  The treatment of your pain is an ongoing process.

(ECF No. 14 at 17-18.)[1]

The progress notes by Dr. Freeman, dated January 10, 2018, stated the following:

PHYSICAL EXAMINATION: On examination, the keloids are stable after injection with steroids.  There is no significant softening of the keloids.  They do not appear to be over reactive based on inflammatory evaluation and appearance.

ASSESSMENT: The patient appears to have no significant response with the steroid injections with large keloids and is incessantly complaining of pain and appears to be fixated on it even thought [sic] the keloids appeared to be relatively mature.

PLAN: At this point, I have nothing else to offer the patient.  I feel that his fixation on pain is going to make any additional surgical intervention difficult and likely unsuccessful.  I think his chance of reoccurrence is very high and the keloids could grow larger.  By performing any surgical intervention this would reactivate the inflammatory phase and would enter into the painful phase of keloid formation, which could last for several years.  His keloids at this time are mature and should be relatively painless based on my experience.  Therefore, the patient can come back and see me on an as needed basis.  I do not feel serial steroid injections were [sic] going to add much benefit.  The patient may need to be seen by a pain specialist for alternatives to his incessant complaint of pain.  I do not feel that surgical intervention will address this and could exacerbate the problem.

(ECF No. 14 at 108.)

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    The Court is not required to accept as true allegations that contradict exhibits attached to the

2    complaint or matters properly subject to judicial notice, or allegations that are merely conclusory,

3    unwarranted deductions of fact, or unreasonable inferences. <u>Daniels-Hall v. National Educ. Ass'n</u>, 629

4    F.3d 992, 998 (9th Cir. 2010).  Even assuming that Plaintiff's keloids presents an objectively serious

5    medical condition, Plaintiff's claim that he is being improperly denied additional surgery for his

6    keloids is a classic example of a disagreement with medical treatment, which is not sufficient to give

7    rise to a constitutional claim for deliberate indifference.

8        It is clear that Plaintiff was evaluated by Dermatologist Sugarman on July 28, 2017, who noted

9    that the keloids could be treated with surgery, but Plaintiff would require postsurgical Kenalog

10   injections to prevent recurrence, and Dr. Sugarman was not sure who would be willing to do such

11   procedure.  (ECF NO. 14 at 28.)  Dr. Sugarman saw Plaintiff again for a follow-up on September 19,

12   2017, and opined that the examination was unchanged.  It was noted that Plaintiff had a surgery

13   appointment in the upcoming month, and it would be important for him to have intralesional Kenalog

14   to the resulting scars to prevent keloid recurrence.  (ECF No. 14 at 27.)

15       While the dermatologist determined surgery could be performed, prison medical officials

16   determined such surgery would not be beneficial for Plaintiff given his medical history. Indeed, the

17   recommendation by the outside medical provider did not set forth any of Plaintiff's medical history

18   and/or set forth any guarantee as to the effectiveness of such surgery in treating Plaintiff's keloid

19   condition. (ECF No. 14, at 27-28, 37.)  Plaintiff's medical record indicate and Plaintiff does not

20   dispute that he was provided steroid injections for the pain and had an active prescription for silver

21   nitrate to treat his keloids.  Plaintiff's allegations in the second amended complaint demonstrate that he

22   was treated by physicians within the prison system and evaluated by a provider outside the prison

23   system who gave differing opinions on whether to treat and how to treat Plaintiff's keloids.

24       Contrary to Plaintiff's contention, Dr. Freeman made the medical determination that surgery

25   would be not successful in decreasing Plaintiff's pain.  (ECF No. 14 at 31.)  Plaintiff has failed to

26   demonstrate that any Defendant was aware that he was at a risk of redeveloping keloids and failed to

27   act.  In fact, the medical evidence relied upon indicates that keloids are difficult to treat and likely to

28   recur if they are removed.  Based on Plaintiff's allegations, this case involves only a difference of

opinion between medical providers regarding treatment for his keloids which does not amount to deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d at 242.   Plaintiff's disagreement with the determinations of the prison medical opinions is insufficient to state a cognizable claim. Plaintiff's claim is unable to be cured by amendment and therefore it should be dismissed.

**V.**

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that the instant action be dismissed, without further leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 30, 2021**

_____
UNITED STATES MAGISTRATE JUDGE

8